Hi, good morning. I'm Judge Gould and I'm presiding today. I'm delighted to be sitting with my colleagues, Judge Graber, who's on my right, and Judge Paz, who's on my left. We have two cases on the argument calendar today, so I probably shouldn't say this, but if someone needs an extra minute or two and they ask for it, I will surely be able to give it to them. Without further ado, we could commence with appellant. The first case on argument is Pierce v. Kijakazi. Good morning. May it please the court, I'm Peter Kessling, appearing on behalf of appellant Ryan Pierce. Yeah, please proceed. Thank you. Your Honor, again, Peter Kessling, appearing on behalf of appellant Ryan Pierce. The appeal before you today, the primary issue that we're bringing to this court is that there were five examining physicians reports contained in the records for the ALJ to consider regarding non-exertional impairments that were at a severity level that we believe would have justified a conclusion that he, our client, the appellant, was unemployable. The ALJ discounted these opinions. We believe that the reasoning is deficient and that that provides error sufficient enough for this court to remand the matter back for hearing before the ALJ. My client, Mr. Pierce, applied for both Title II and Title XVI benefits in August of 2015. He was alleging an onset date of October 19 of 2011. He was a younger individual, 30 years old at this time, and suffered from a combination of both physical and mental slash psychological impairments. There was a hearing held August 17 that resulted in a finding of not disabled. That decision was appealed. Mr. Kessling, you know, your time is short, and we're pretty familiar with the basics. It would be most helpful to me if you could explain to me why you believe that the ALJ erred in discrediting the five doctors. I sort of broke them down into different categories, and the one I found, to the extent it raises any problems for me, is with Dr. Kruger. But why don't you tell me, you know, if you could help me understand your argument, I think that would be useful. Thank you. I appreciate the question, and I'm happy to focus more concisely. So as your honors know, there is a five-step process with regard to the evaluation of any disability application. And once we get past level four, which is whether or not the claimant has the capacity to perform past relevant work, if the ALJ concludes that that's not the case, then the burden shifts to the commissioner and to the ALJ to prove that he is able to perform other work that's available. So let me try again to get some focus. The ALJ rejected these assessments of the psychologist for several reasons, including that he worked at some real jobs for several years, even while he had these same impairments, that he presented in a less impaired way to his treating doctors, and that he had activities that were inconsistent with complete disability, all the way from household chores and shopping to caring for a partner, and that ALJ also concluded that he was exaggerating in an attempt to get benefits. So what's wrong with that basic line of reasoning? So, your honor, one primary issue that comes to mind is that there was also evidence from lay people that substantiated the way he presented to the examining physicians, including his father, Ron Pierce, who testified by way of written answers to questions that he had struggles with, the things that the ALJ believed were inconsistent with the observation. But the ALJ gave reasons for discounting those, mainly that they relied on the claimant, who the ALJ found had exaggerated, and again, the idea that it was not consistent with the treating physician's notes. So I'm still struggling to figure out why the reasoning was erroneous. Okay. Thank you, your honor. As reflected in our briefing in this matter and in the record, each of these doctors had their own observations. These observations were based on an examination, an interview, and there were five of them. And I understand, your honor, that the ALJ is able to look back throughout the treatment records and see that perhaps there were days he presented to treatment providers in a way that seems inconsistent. But as someone that has litigated many injury cases and disability cases, people with injuries and disabilities have good days and bad days. And frankly speaking, when you have five medical professionals all sharing similar conclusions or opinions, excuse me, with regard to what his functional capacities are, that is more consistent with a finding that is reliable than cherry-picking items of evidence in the record that seem inconsistent with the way he presented on the days of the examination. Were any of the psychologists' assessments or opinions based on sort of concrete objective evidence? I mean, there was evidence in the record of Dr. Kruger's testing and whatnot. That's why I sort of mentioned him differently. He seems to be in a different category. Yeah, Dr. Kruger specifically, let me get to that point in our spot. But Dr. Kruger specifically conducted additional testing beyond what the other doctors had done. And as a result of that testing came to the opinions that he reached. Each of the doctors, though, conducts an examination, an interview. And as reflected in our briefing, there's case law that bears out that psychologists are trained to observe and also make determinations with regard to whether or not they think they're exaggerating or making things up for purposes of coming to their conclusion. And so it's our position that the observations that are listed in these examination reports are consistent with their opinions. Let me ask you this. As Judge Graber pointed out, what do we make with the assessment by the ALJ? And it's somewhat noted in the psychologist's findings that he did have some sort of concentration or he seemed to be preoccupied with his disabilities. And that's noted by the evaluators and by the ALJ. What do we do with that? I mean, is that part of his psychological problems or is that just exaggerating his condition so that he can get benefits? What's going on? So, Your Honor, I believe that in Dr. Wheeler's report, she also makes note of that. And she actually says that his association with his disabilities is such that he cannot separate himself from it. In other words, I believe that the medical evidence supports a conclusion that that is part of his disability. He's focused upon the issues that are being presented. Counsel, if evidence supports that conclusion, still, isn't there precedent saying the primary job of weighing medical evidence rests with the ALJ? Yes, Your Honor. That is the primary job of the ALJ. I believe the cumulative evidence, though, in this case provides an opposite conclusion. And I don't think that there's more than a scintilla of evidence for the ALJ to have faced his rejection. So you don't think there's substantial evidence supporting the ALJ's decision? Counsel, your time's almost up. But for planning purposes, I will give you two minutes time extra to make a rebuttal argument. I appreciate that, Your Honor. If you wish to do so. Okay, then I guess we should hear next from the government. Thank you. Good morning, and may it please the Court. My name is Christopher Brackett. I'm appearing on behalf of the Commissioner of Social Security. And I ask that the Court uphold the ALJ's decision because it is, in fact, supported by substantial evidence. Now, substantial evidence does support the ALJ's specific and legitimate reasons for discounting the psychologist's opinion in this decision. Substantial evidence, as we know, is simply such relevant evidence that a reasonable mind might accept as adequate to support the conclusion. And even if the evidence can support multiple different interpretations, if the ALJ's conclusion is reasonable, then this Court should affirm it. In terms of these medical opinions, and we're talking about evaluations that happened over the span of roughly seven years, the ALJ looked at each one and provided legitimate reasons. Specifically, in terms of Dr. Niemes and Wheeler, the claimant's presentation to these doctors stood in stark contrast to the observations of the claimant's treatment providers over the course of several years. Contemporaneous treatment records. If you look at the ALJ's reference to the record of the treatment records, it's not all. The notes of the doctors do show that he had difficulties as well as some improvement with the medication. It's just not all that he was improving steadily or that his condition had stabilized or anything. There are also notes in those treatment records showing the issues that he had, the problems that he had. I was troubled by the way the ALJ just sort of passed over those treatment records. Well, Your Honor, first of all, it's never been our position that the claimant is completely normal and operating at 100%. The ALJ did find significant limitations based on his mental impairments. But in terms of the treatment record, we're talking a longitudinal picture, and there's going to naturally be variances in his functioning from one examination to the next. Earlier in the decision, before he reached the medical opinions, the ALJ summarized this evidence, and I believe it was on pages 1051 to 1052 of the administrative record, which is pages 8 and 9 of his decision. And he really summarizes that between the – he kind of breaks it up into the earlier treatment on 1051. He acknowledges that there were instances of restricted affect and anxiety, but there were also more benign mental status examination findings during that treatment as well. And then later, after – from the period of 2016 to 2020, you know, there were problems with impaired judgment and perseveration in the thought process. The ALJ acknowledged that, but then focused more on his generally cooperative and calm behavior. I mean, many of the limitations we're talking about here were social limitations, so that the claimant was presenting as cooperative and calm, maintaining good eye contact, had normal speech and intact judgment. I mean, these were – these are findings that the ALJ could reasonably conclude were inconsistent with the limitations described by Drs. Neames, Wheeler, and the rest. How about Dr. Kruger? I mean, when I went through all these records and looked at Dr. Kruger's, Dr. Kruger went a step further, and he administered some psychological tests. He did a personality assessment inventory, yes. He also did the mental status examination and the trail marking tests. And I think the personality assessment was the only one that was different from the others. It's hard to say – or to conclude that his assessment was just based on the oral – you know, on Pierce's own self-assessment that he related to the doctor. Well, as the – To Dr. Kruger. As the ALJ noted, the – you know, the claimant, Dr. Kruger, did note that the claimant presented as pleasant and cooperative, which is reflected in the notes in Dr. Kruger's examination. Dr. Kruger also observed that he did unexpectedly well on testing of executive functioning. And looking at the mental status examinations themselves, the discrete tests show a span from within normal limits to more limited areas. But the overall limitations in most areas that Dr. Kruger observed were within normal limits or occasionally impaired. And as such – you know, again, going back to the substantial evidence standard, one adjudicator might look at that and find it more troubling and more consistent with the examination – with the opinion of Dr. Kruger. Another adjudicator, such as – like the ALJ here, could conclude otherwise, could conclude that, you know, this is incongruent with what the doctor said. And then the doctor noted that this was – you know, most likely the Dr. Kruger was – I mean, the ALJ – I'm sorry – noted that Dr. Kruger was most likely relying on subjective complaints, given the lack of findings in that mental status examination that could support the marked limitations. But he did have – I mean, he did have other – he had other objective evidence on which to rely in forming his opinions. Well, the personality assessment inventory, I believe Dr. Kruger did actually observe himself that that was inconsistent with the interview. I believe that was in the 2014 evaluation. I could get a record cite for you. It was on 724 of the administrative record. Oh, I'll get it real quick. Yeah. Go ahead. Yeah, and that was in the personality assessment. He noted – the doctor noted there were elevated indications of problems,  So, you know, it's not clear that Dr. Kruger actually relied upon that assessment in reaching his conclusions. In total, the ALJ's assessment of that – those opinions was a reasonable conclusion for him to draw. Right. Turning to Drs. Neames and Wheeler and Dr. Riddell, you know, the ALJ specifically highlighted the evidence from the course of treatment. He took a lot of – Maybe you can just help me understand Dr. Kruger, at least from your perspective. And this will – so on page 724 of the record? Yes. Where Dr. Kruger gives his final statement there called personality assessment inventory? Yes. And Dr. Kruger says, Extremely elevated depression, anxiety factors, partly because so negative and pessimistic about self. A lot of hopelessness, which drives his pessimism. A lot of suspicionness resulting in sense of others picking on him. But most elevations do not go along with what said during interview, which does not support a lot of diagnosis made during interview. In other words, I read that as saying that Pierce was making his own self-diagnosis, but when Dr. Kruger's making his final assessment, there are other issues that are going on. And he actually says Pierce's self-diagnosis doesn't really work, but there are other elevations that are serious. That's the way I read it. I see your reading of it, Your Honor. And I would say that he acknowledged earlier in the evaluation that Pierce was claiming to have PTSD or obsessive-compulsive disorder and that there was no diagnostic basis for that. But I would say when it says most elevations do not go along with what is said in the interview, I don't know if that's specifically tied exclusively to those diagnoses that Pierce had asserted that he had. And that's why when we look to the mental status examination itself, overall it doesn't seem to be as troubled as the opinion would reflect. And that's why the ALJ ultimately gave the opinion less weight, particularly when he had other opinions to rely upon. But overall, the ALJ's interpretation of the record represents one reasonable interpretation, and because of this it is supported by substantial evidence. Regarding the other issues, I'll rely on what has been argued in the briefing. And if the Court has no further questions, then I would say thank you and ask the Court to affirm. Thank you. Thank you. No questions here. Thank you. So Mr. Kitzley. Okay. Thank you. With reference to Dr. Kruger, he does note, by the way, that Mr. Pierce did describe being capable of doing some activities of daily living, which is inconsistent with the assertion that he was far-reaching with regard or making things up when at these examinations. And despite that, and despite, as counsel argued, that there were some self-diagnoses that were inconsistent with Dr. Kruger's findings, still found many marked limitations with regard to non-exertional limitations. Also, I wanted to come back around to a question asked with regard to Mr. Pierce's self-diagnosing and being focused on his disabilities. As I indicated in the first set of argument here, Dr. Wheeler, in fact, in her report at, let's see, it's 721 of the record, indicates that he is so firmly attached to his misery that he's unwilling to make any changes and would likely, be unlikely, excuse me, to make effective use of therapy, given externalized view of others being responsible for his emotional distress. Dr. Wheeler goes on to opine that that is part of his disability. Nonetheless, I appreciate the opportunity to stand before you today and make arguments on behalf of my client. If you have any questions, I'm happy to answer, but it is our position that the ALJ's discredition of the five opinions is not based on substantial evidence. Thank you, counsel. So now, this case shall be submitted. Pierce versus Kijikazi. And the parties will hear from us in due course. I thank both counsel for the excellent advocacy.
judges: GRABER, GOULD, PAEZ